ADAM R. FULTON, ESQ.
Nevada Bar No. 11572
afulton@jfnvlaw.com
LOGAN G. WILLSON, ESQ.
Nevada Bar No. 14967
logan@jfnvlaw.com
**JENNINGS & FULTON, LTD.**
2580 Sorrel Street
Las Vegas, NV 89146
Telephone: (702) 979-3565
Facsimile: (702) 362-2060
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PAUL TAYLOR, an individual,<br><br>        Plaintiff,<br>vs.<br><br>MGM GRAND HOTEL, LLC, a Nevada Limited Liability Company; DOES I-X, inclusive; and ROE CORPORATIONS I-X, inclusive,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff PAUL TAYLOR, by and through his attorneys of record, ADAM R. FULTON, ESQ. and LOGAN G. WILLSON, ESQ., of the law firm of JENNINGS & FULTON, LTD., hereby files this Complaint against Defendants MGM GRAND HOTEL, LLC, DOES I-X, and ROE CORPORATIONS I-X and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff PAUL TAYLOR is an individual that at all relevant times herein was a resident of Clark County, Nevada.

2. Defendant MGM GRAND HOTEL, LLC ("MGM") is a Nevada Limited Liability Company conducting business in Clark County, Nevada at all relevant times herein.

3. Plaintiff does not know the true names of the individuals, corporations, partnerships and entities sued and identified in fictitious names as DOES I through X and ROE CORPORATIONS I through X, specifically any parent or sister company of MGM. Plaintiff alleges that such Defendants assisted or participated in activities that resulted in damages suffered by Plaintiff as more fully discussed under the claims for relief set forth below. Plaintiff requests leave of this Honorable Court to amend this Complaint to show the true names and capacities of each such fictitious Defendants when Plaintiff discovers such information.

4. This Court has personal jurisdiction over all parties, as all parties involved are either residents of Clark County, Nevada or conduct business in Clark County, Nevada.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331 in that this case arises under federal and state law, specifically for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Nevada's Unlawful Employment Practices statute, NRS 613.330.

6. Venue is proper because all events giving rise to Plaintiff's claims occurred in Clark County, Nevada.

## ADMINISTRATIVE PREREQUISITES

7. More than 30 days prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and NRS 613.330 by MGM.

8. On September 16, 2022, the EEOC issued Mr. Taylor a Notice of Right to Sue, giving him 90 days from receipt of such notice to file his Complaint related to his Title VII and NRS 613.330 claims. *See* Exhibit 1.

## GENERAL ALLEGATIONS

9. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set

forth herein.

10. Mr. Taylor began his employment at MGM on December 13, 1993 as a Dealer and was promoted over the years to his most recent position as a salaried Floor Manager.

11. Mr. Taylor was an exemplary employee for nearly 30 years.

12. On August 16, 2021, MGM Resorts International ("MRI") announced that all salaried employees and all new hires employed at any MRI subsidiary, including MGM, must be fully vaccinated from Covid-19 by October 15, 2021 ("Vaccination Mandate").

13. MGM required all salaried employees and new hires who did not work exclusively from home to receive a Covid-19 vaccination by October 15, 2021.

14. On September 16, 2021, Mr. Taylor timely submitted his religious exemption ("Religious Exemption") identifying his sincerely held non-denominational religious beliefs.

15. Additionally, Mr. Taylor submitted a medical exemption.

16. On September 23, 2021, an MGM representative submitted a questionnaire for Mr. Taylor to fill out regarding his Religious Exemption.

17. On September 23, 2021, an MGM representative confirmed that Mr. Taylor sought both a religious and medical exemption.

18. On October 6, 2021, Mr. Taylor sent MGM informational material regarding MGM's Vaccination Mandate.

19. On October 7, 2021, Mr. Taylor timely submitted his response to the questionnaire provided.

20. On October 9, 2021, MGM denied Mr. Taylor's Religious Exemption and disputed his sincerely held religious beliefs.

21. MGM asserted that it could not grant the Religious Exemption because it would interfere with Mr. Taylor's guest and employee interactions, the same interactions non-salaried

and/or non-vaccinated employees would face.

22. MGM summarily concluded that granting the Religious Exemption would be an undue hardship and gave Mr. Taylor six (6) days, until October 15, 2021, to get fully vaccinated.

23. Due to his sincerely held religious beliefs, Mr. Taylor did not get vaccinated, objected to MGM's response, and was subsequently terminated based on the same.

24. MGM subjected Mr. Taylor to disparate treatment because of his religion that unvaccinated hourly MGM employees were not subject to.

25. Mr. Taylor belonged to a protected class.

26. Mr. Taylor was qualified to and performed his job satisfactorily for numerous years and suffered adverse employment action simply because of his religion.

27. Similarly situated individuals outside of Mr. Taylor's protected class were treated more favorably by not being subject to MGM's Vaccination Mandate.

28. MGM separated its employees, specifically Mr. Taylor, who submitted religious exemptions into their own separate class based on sincerely held religious beliefs.

29. There was no undue hardship to MGM because Mr. Taylor would have continued to exercise social distancing, worn masks, and subject himself to Covid-19 testing.

30. Moreover, MGM provided on-site Covid-19 testing for employees, making it feasible for Mr. Taylor to receive testing on property.

31. Notably, non-salaried employees were not subject to the Vaccination Mandate despite working for various MRI properties.

32. Moreover, MGM no longer maintains the Vaccination Mandate for salaried employees.

33. If the Vaccination Mandate was for safety, it would be applied across the board, not simply to salaried employees who make up a fraction of all MGM employees.

34. As a direct and proximate result of the aforementioned acts and/or omissions, MGM violated Title VII and NRS 613.330, and retaliated against Plaintiff.

35. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seek recovery of his attorneys' fees and costs.

**FIRST CLAIM FOR RELIEF**

**(Discrimination on the Basis of Religion in Violation of Title VII, 42 U.S.C § 2000e, *et seq.*)**

36. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

37. After MGM implemented the Vaccination Mandate, Mr. Taylor timely submitted his Religious Exemption and his response to MGM's questionnaire, MGM denied Mr. Taylor's Religious Exemption and subsequently terminated him.

38. Due to his sincerely held religious beliefs, Mr. Taylor did not get vaccinated, objected to MGM's response, and was subsequently terminated based on the same.

39. MGM subjected Mr. Taylor to disparate treatment because of his religion that unvaccinated hourly MGM employees were not subject to.

40. Mr. Taylor belonged to a protected class.

41. Mr. Taylor was qualified to and performed his job satisfactorily for numerous years and suffered adverse employment action simply because of his religion.

42. Similarly situated individuals outside of Mr. Taylor's protected class were treated more favorably by not being subject to MGM's Vaccination Mandate.

43. MGM separated its employees, specifically Mr. Taylor, who submitted religious exemptions into their own separate class based on sincerely held religious beliefs.

44. There was no undue hardship to MGM because Mr. Taylor would have continued to exercise social distancing, worn masks, and subject himself to Covid-19 testing.

45. Moreover, MGM provided on-site Covid-19 testing for employees, making it feasible for Mr. Taylor to receive testing on site.

46. Notably, non-salaried employees were not subject to the Vaccination Mandate despite working for various MGM properties.

47. Moreover, MGM no longer maintains the Vaccination Mandate for salaried employees.

48. If the Vaccination Mandate was for safety, it would be applied across the board, not simply to salaried employees who make up a fraction of all MGM employees.

49. MGM subjected Mr. Taylor to unequal terms and conditions of employment due to his religion in violation of Title VII, 42 U.S.C § 2000e, *et seq*.

50. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seek recovery of his attorneys' fees and court costs.

## SECOND CLAIM FOR RELIEF

**(Retaliation in Violation of Title VII, 42 U.S.C § 2000e, *et seq.*)**

51. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

52. After MGM implemented the Vaccination Mandate, Mr. Taylor timely submitted his Religious Exemption and his response to MGM's questionnaire, MGM denied Mr. Taylor's Religious Exemption and subsequently terminated him.

53. Due to his sincerely held religious beliefs, Mr. Taylor did not get vaccinated, objected to MGM's response, and was subsequently terminated based on the same.

54. MGM subjected Mr. Taylor to disparate treatment because of his religion that unvaccinated hourly MGM employees were not subject to.

55. Mr. Taylor belonged to a protected class.

56. Mr. Taylor was qualified to and performed his job satisfactorily for numerous years and suffered adverse employment action simply because of his religion.

57. Similarly situated individuals outside of Mr. Taylor's protected class were treated more favorably by not being subject to MGM's Vaccination Mandate.

58. MGM separated its employees, specifically Mr. Taylor, who submitted religious exemptions into their own separate class based on sincerely held religious beliefs.

59. There was no undue hardship to MGM because Mr. Taylor would have continued to exercise social distancing, worn masks, and subject himself to Covid-19 testing.

60. Moreover, MGM provided on-site Covid-19 testing for employees, making it feasible for Mr. Taylor to receive testing on site.

61. Notably, non-salaried employees were not subject to the Vaccination Mandate despite working for various MGM properties.

62. Moreover, MGM no longer maintains the Vaccination Mandate for salaried employees.

63. If the Vaccination Mandate was for safety, it would be applied across the board, not simply to salaried employees who make up a fraction of all MGM employees.

64. MGM retaliated against Mr. Taylor in violation of Title VII, 42 U.S.C § 2000e, *et seq*.

65. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seek recovery of his attorneys' fees and court costs.

### THIRD CLAIM FOR RELIEF

**(Discrimination on the Basis of Religion in Violation of NRS 613.330)**

66. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

67. Pursuant to the provisions of NRS 613.330(1)(a), it is an unlawful employment practice for an employer to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her religion.

68. Pursuant to the provisions of NRS 613.330(1)(a), it is an unlawful employment practice for an employer to adversely affect an employee's status because of his or her religion.

69. After MGM implemented the Vaccination Mandate, Mr. Taylor timely submitted his Religious Exemption and his response to MGM's questionnaire, MGM denied Mr. Taylor's Religious Exemption and subsequently terminated him.

70. Due to his sincerely held religious beliefs, Mr. Taylor did not get vaccinated, objected to MGM's response, and was subsequently terminated based on the same.

71. MGM subjected Mr. Taylor to disparate treatment because of his religion that unvaccinated hourly MGM employees were not subject to.

72. Mr. Taylor belonged to a protected class.

73. Mr. Taylor was qualified to and performed his job satisfactorily for numerous years and suffered adverse employment action simply because of his religion.

74. Similarly situated individuals outside of Mr. Taylor's protected class were treated more favorably by not being subject to MGM's Vaccination Mandate.

75. MGM separated its employees, specifically Mr. Taylor, who submitted religious exemptions into their own separate class based on sincerely held religious beliefs.

76. There was no undue hardship to MGM because Mr. Taylor would have continued to exercise social distancing, worn masks, and subject himself to Covid-19 testing.

77. Moreover, MGM provided on-site Covid-19 testing for employees, making it feasible for Mr. Taylor to receive testing on site.

78. Notably, non-salaried employees were not subject to the Vaccination Mandate despite working for various MGM properties.

79. Moreover, MGM no longer maintains the Vaccination Mandate for salaried employees.

80. If the Vaccination Mandate was for safety, it would be applied across the board, not simply to salaried employees who make up a fraction of all MGM employees.

81. Mr. Taylor's damages resulted from an occurrence of the nature which NRS 613.330 is designed to prevent.

82. Moreover, Mr. Taylor is within the class of persons NRS 613.330 is designed to protect.

83. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seek recovery of his attorneys' fees and court costs.

## FOURTH CLAIM FOR RELIEF

**(Retaliation in Violation of NRS 613.330)**

84. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

85. After MGM implemented the Vaccination Mandate, Mr. Taylor timely submitted his Religious Exemption and his response to MGM's questionnaire, MGM denied Mr. Taylor's Religious Exemption and subsequently terminated him.

86. Due to his sincerely held religious beliefs, Mr. Taylor did not get vaccinated, objected to MGM's response, and was subsequently terminated based on the same.

87. MGM subjected Mr. Taylor to disparate treatment because of his religion that unvaccinated hourly MGM employees were not subject to.

88. Mr. Taylor belonged to a protected class.

89. Mr. Taylor was qualified to and performed his job satisfactorily for numerous years and suffered adverse employment action simply because of his religion.

90. Similarly situated individuals outside of Mr. Taylor's protected class were treated more favorably by not being subject to MGM's Vaccination Mandate.

91. MGM separated its employees, specifically Mr. Taylor, who submitted religious exemptions into their own separate class based on sincerely held religious beliefs.

92. There was no undue hardship to MGM because Mr. Taylor would have continued to exercise social distancing, worn masks, and subject himself to Covid-19 testing.

93. Moreover, MGM provided on-site Covid-19 testing for employees, making it feasible for Mr. Taylor to receive testing on site.

94. Notably, non-salaried employees were not subject to the Vaccination Mandate despite working for various MGM properties.

95. Moreover, MGM no longer maintains the Vaccination Mandate for salaried employees.

96. If the Vaccination Mandate was for safety, it would be applied across the board, not simply to salaried employees who make up a fraction of all MGM employees.

97. MGM retaliated against Mr. Taylor in violation of NRS 613.330.

98. Plaintiff has been forced to hire an attorney to prosecute this action and therefore seek recovery of his attorneys' fees and court costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows:

1. For judgment against Defendants for Plaintiff's compensatory damages, together with interest thereon until entry of judgment;

2.  For judgment against Defendants for Plaintiff's lost wages and backpay, together with interest thereon until entry of judgment;

3.  For an award of punitive damages against MGM for its violation of Title VII and NRS 613.330, together with interest thereon until entry of judgment;

4.  For entry of an order compelling Defendant to pay Plaintiff's costs and attorneys' fees;

5.  Consequential and incidental damages according to proof at trial;

6.  For special damages; and

7.  For such other and further relief as the Court may deem just and proper.

DATED: December 14th, 2022                **JENNINGS & FULTON, LTD.**

By:  */s/ Adam R. Fulton, Esq.*
ADAM R. FULTON, ESQ.
Nevada Bar No. 11572
afulton@jfnvlaw.com
LOGAN G. WILLSON, ESQ.
Nevada Bar No. 14967
logan@jfnvlaw.com
2580 Sorrel Street
Las Vegas, NV 89146
*Attorneys for Plaintiff*

# EXHIBIT 1

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## **DETERMINATION AND NOTICE OF RIGHTS**
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/16/2022

**To:** Paul R. Taylor

Charge No: 487-2022-00329

EEOC Representative and email:   Michelle Silvers
Investigator
michelle.silvers@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 487-2022-00329.

On behalf of the Commission,

Digitally Signed By: Christine Park-Gonzalez
09/16/2022

Christine Park-Gonzalez
Acting District Director

**Cc:**
Ashley Eddy
MGM Resorts International
6385 S. Rainbow Blvd., Suite 500
Las Vegas, NV 89118

Kyle Hoyt
Jackson Lewis P.C.
300 S 4TH ST STE 900
Las Vegas, NV 89101

Logan G Wilson
JENNINGS & FULTON LAW FIRM
2580 Sorrel Street
Las Vegas, NV 89146

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 487-2022-00329 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor

Los Angeles, CA 90012.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

Enclosure with EEOC Notice of Closure and Rights (01/22)